# Wible *versus* Wible.

1. Exclusive possession in a vendee, by parol, is necessary to the perfection of his title.

2. The law insists upon it as a *sine qua non*, that he who claims title to land by parol, shall show a possession taken and maintained, according to the title he sets up.

3. The courts demand a clear and exclusive possession in the vendee, both as part performance of a parol contract, and as evidence that such a contract was ever made.

4. H. applied to the Orphans' Court to make partition of real estate; W. resisted on the ground that the land belonged to him by virtue of a parol gift. The Orphans' Court ordered an amicable ejectment to be entered to try the right, which resulted in a verdict in favor of W. *Held*, that this was only a feigned issue, to inform the conscience of the court, and of no conclusive effect.

ERROR to the Court of Common Pleas of *Westmoreland county*.

In 1838 or 1839, Thomas Wible entered into a contract with Abraham Horbach, for the purchase of the land in dispute, and, on the 31st of March, 1842, obtained a deed from him. Thomas Wible died intestate in the year 1850, his wife died in 1852, and his son William, under whom defendants claimed, in 1853. Thomas Wible left a widow and issue four children, to wit: Henry, Mrs. Rue, Mrs. Rice, and William, all of whom, except William, had left home for many years before the father's death. William always resided with his father and mother, and worked for them till he moved on the land in dispute. At the time Thomas Wible purchased the Horbach farm, (the one in dispute,)

[Wible *v.* Wible.]

he resided on a farm he owned in Unity Township, about six miles from the Horbach place, and William resided on the same farm with his family.

It was admitted in the court below, in all stages of the cause, that Thomas Wible had bought the land in dispute for his son William; that he intended William should have it after his death, and that he had signified this to a great many people, no doubt, at different times.   But, along with the admission, it was asserted, and shown, that it was also the intention of Thomas Wible to remain the owner till his death; that he went into the possession himself about a year after he had put William on it; that he continued in possession until his death; that during this time, the old man, as well as William, made improvements, each paying one-half for the new house, and each paying for his own kitchen. And, when they built the new house, each made windows in his own end of it to suit himself, and not like to one another.   William took the proceeds of the farm, and paid the taxes; it was assessed in the name of William.   After the death of Thomas Wible, his son Henry presented a petition to the Orphans' Court for the partition or valuation of the land, and an inquest was awarded on the 17th February, 1851, and the land appraised at $34.75 per acre.   At May term, William Wible presented to the court his affidavit, in which he asserted his claim to the land, under a parol gift from his father, denying that Thomas Wible died seised.   To determine the right, the Orphans' Court ordered that an amicable action of ejectment be entered, in which Henry Wible and others should be plaintiffs, and William Wible defendant.   This issue was tried, and determined in favor of the defendant, William Wible.   The plaintiffs' counsel, *inter alia*, requested the court to charge :

"3. That William Wible, not having continued in the exclusive possession, after the alleged gift of the land to him, leaves the case within the Statute of Frauds, and the plaintiffs are entitled to recover.

"4. That in this case the improvements can be compensated in damages, if their value exceeds the annual value of the land; and, therefore, the plaintiffs are entitled to recover.

"5. That all the evidence in this case, supposing it true, fails to create in the defendants such an equity as would take the case out of the Statute of Frauds, and the plaintiffs are entitled to recover."

To which the court, BUFFINGTON, P., answered as follows:

"3. This point is answered in the affirmative, as all the evidence shows a joint possession for some eight or nine years before the old man's death, an expenditure of money by both in improvements, and dying in possession by the father.

"4. This point is answered in the affirmative, that the im-

[Wible *v.* Wible.]

provements may be compensated, if they are not already, out of the profits of the land.

"5. This point is answered in the affirmative. Taking all the facts given in evidence to be true, and proved to the satisfaction of the jury, it is the opinion of the court that they do not present such a case as avoids the operation of the Statute of Frauds, or that a chancellor would decree a conveyance; and, for these reasons, the plaintiffs are entitled to recover."

The foregoing answers were the errors complained of.

————, for plaintiff in error.

It is undoubtedly the case, that exclusive possession of land must be taken, in pursuance of the gift to take it out of the operation of the Statute of Frauds; but that it must be so maintained forever, in the manner the answer of the court seems to indicate, is a position not sustained either by reason or authority. *Bellington* v. *Welsh*, 5 Bin. 131; 1 Par. 79; 3 S. & R. 446; 9 W. 41; 10 W. 209; 9 W. & S. 49; 2 H. 260; 2 Jones, 117; *Young* v. *Clendenning*, 6 W. 509; *Sweetzinger* v. *Ridgeway*, 9 W. 496.

*Cowan* and *M'Kinney*, for defendant in error:

Referred to *Haslet* v. *Haslet*, 6 W. 464; *Frye* v. *Shepler*, 7 Barr, 91; *Moore* v. *Small*, 7 H. 467; *Brown* v. *Nickle*, 6 Barr, 390.

The opinion of the court was delivered January 19, 1857, by

WOODWARD, J.—The court was of the opinion that all the evidence was insufficient to create in the defendant such an equity as would take the case out of the Statute of Frauds, and to combat this opinion the counsel of the defendant are driven to the necessity of arguing, that exclusive possession in a vendee by parol, is not necessary to the perfection of his right. Suppose the father did declare a thousand times that he had bought the farm for William, and meant to give it to him, the point still remains to be established, that he had done so. He might have taken the deed directly to his son; he might have executed the purpose in his mind by an instrument in writing, any time before his death; but he did neither. Then how is the fact of a parol gift or sale to be proved?

Possession of land, taken and maintained, is an open and notorious fact, capable of proof by many witnesses, and about which mistakes are less common than when conversations are to be detailed by those who had no interest in understanding and remembering them, and hence the law insists upon it as a *sine qua non*, that he who makes title to land by parol, shall show a possession, taken and maintained, according to the title he sets up. If he cannot do this, he proves talk to no purpose. Words merely

[Wible *v.* Wible.]

spoken, cannot be title to land whilst the Statute of Frauds and Perjuries lasts. The best of reasons, those that touch the perpetuity and happiness of the family and community, could be given, and have been many times given, for the rule ; but if they do not commend themselves to the understanding, there is the rule in the statute, *Ita lex scripta est ;* there is but one way of answering that, which is to repeal it. True, the statute does not demand possession in the vendee, because it reduces *all* parol estates to three year leases, but as a mode of evading the harsh operation of the statute, and relieving those who have no other relief, the courts demand a clear and exclusive possession, not only as part performance of the parol contract, but as evidence that such a contract was ever made. It is a test of truth, proposed for the benefit of those who have a defective title to establish. And now we are asked to dispense with this test. The defendants cannot endure its application. There was no exclusive possession in the son. The father and mother lived and died on the land, which it is now said had been given or sold to the son by parol. Suppose we should yield the point that is demanded, and say, contrary to all the authorities, that exclusive possession was not necessary, what sort of a title would the defendant have ? No witness proves the parol bargain between the father and the son. The declarations of the father, living in the memory of the neighborhood would be the title, and when that memory died out, the title would perish with it. A thousand years ago, our rude ancestry would have insisted on more than this. They would have required that a shoe be plucked off, or a twig, or a turf, or a door latch be delivered in sign of the bargain. With us, writing is as common as bargaining ; and a statute requires transfers of land to be in writing ; and yet we are urged to tolerate titles without a written word, or a visible symbol. From the time of the patriarchs, no nation that has recognized property in land, has trifled thus with boundaries and titles ; and it is a desperate expectation, that the courts of the nineteenth century, held up to their duty by a legislative enactment, are going to relapse into comparative barbarism, and leave land titles to be proved by the most imperfect of all traditions, that of words. Another reason why the court did not consider this a case taken out of the statute, was, that improvements made, if not compensated by profits, could be readily compensated in damages, which was a good reason, and well sustained by authority, but wholly unnecessary, for the failure to take and maintain exclusive possession, was final and decisive against the defendants.

A point is started here, which does not appear to have been made in the court below. After the death of Thomas Wible, his son Henry applied to the Orphans' Court for partition of this

[Miranville *v.* Silverthorn.]

land, which William, the ancestor of the defendant, resisted, on the ground that the land belonged to him by virtue of the parol gift. On the 20th May, 1851, the Orphans' Court ordered that an amicable ejectment be entered to try: which was done, and it resulted in a verdict in favor of William. This verdict, it is now said, concludes the right; and we are referred to the various and complicated legislation that has been had, on the effect of a recovery in ejectment, but we do not deem it necessary to inquire into the present state of our statute law on the subject, because we regard the ejectment found and tried under the order of the Orphans' Court as nothing more than a feigned issue, designed to inform the conscience of that court on a matter of fact essential to their exercise of jurisdiction. The issue might have been in any other form, and imports no more in the form of ejectment, than it would in assumpsit upon a wager. The verdict in such cases is merely advisory; no judgment is entered upon it, and no conclusive effect can be predicated of it. It is like a verdict in an issue sent by the Chancellor to a court of law, which he may disregard, if he is not satisfied with it. 2 Daniel's Chan. 1334, in note. If the record of that proceeding were a part of the evidence in this case, the court were in no error in saying that there was no evidence to bar the plaintiff; if it was not, then the question is raised here in the assignment of error.

On the whole, we think the answers of the court were discreet, and well sustained by authority; and the judgment is affirmed.

LEWIS, C. J., dissented.